# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PETER RODRIGUEZ APONTE, #325753,

      Petitioner,

                            Civil No: 06-CV-11216
                            Honorable Victoria A. Roberts

v.

KENNETH MCKEE,

      Respondent.

_____/

## OPINION & ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Petitioner, Peter Rodriguez Aponte, is a state inmate currently incarcerated at Bellamy Creek Correctional Facility in Ionia, Michigan.  Petitioner was convicted at the conclusion of an Oakland County Circuit Court jury trial of first-degree murder, Mich. Comp. Laws §750.316(1)(b); armed robbery (subsequently vacated), Mich. Comp. Laws §750.157a; conspiracy to commit armed robbery, Mich. Comp. Laws §750.157a; and three counts of possession of a firearm during the commission of a felony (one of which was subsequently vacated), Mich. Comp. Laws §750.227b.  Petitioner was sentenced to concurrent prison terms of life imprisonment for the murder conviction, and eighteen months to thirty years each for the robbery and conspiracy convictions, to be served consecutively to three concurrent two year terms of imprisonment for the felony firearm convictions.   Petitioner filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254.  For the reasons that follow, the Court **DENIES** the petition.

# I. BACKGROUND

This conviction arose from the shooting death of Tony Sanchez.  It is alleged that Petitioner, along with Juan Santiago and Hector Santiago, conspired to rob Tony Sanchez on September 20, 1999.   The Santiago cousins were employees of Mr. Sanchez, owner of a landscaping business.  It was customary for Mr. Sanchez's employees to come to his home to either get paid for their previous work or to receive work orders for the day.

It is alleged that the Santiago cousins went to Mr. Sanchez's home in order to pick up their pay, which was typically distributed in cash, and Petitioner went along .  The prosecution theorized that the Santiago cousins robbed Mr. Sanchez; and Petitioner fatally shot him in the face. The Santiago cousins testified, however, that Petitioner single-handedly robbed Tony Sanchez by taking his wallet, the payroll money and money that was in his safe.  They further testified that Petitioner forced them (the Santiago cousins) to take part in the robbery and murder of Tony Sanchez.  Petitioner maintains  that he took no part in the robbery and murder of Mr. Sanchez.  Petitioner asserts that it was the Santiago cousins, who he claims are gang members, who perpetrated the crime and then threatened Petitioner.

Petitioner filed an appeal of right and raised the following issues:

I. The trial court reversibly erred in granting the prosecution's request to read Mrs. Aponte's recorded testimony to the jury after the defense asserted the spousal privilege, as a defense counsel adequately asserted the privilege during Mrs. Aponte's testimony at the preliminary examination, or, in the alternative Defendant was denied his Sixth Amendment right to the effective assistance of counsel if the assertion of the privilege during the preliminary examination is found deficient.

II.  The trial court reversibly erred in overruling the defense motion to suppress the in-court identification of Mr. Aponte by witness Richard Chittick,

2

as the record shows the police failed to use sufficient diligence in seeking to assemble a live pre-trial line-up, where Mr. Aponte was in custody, prior to resorting to a photographic display.

III. Defendant was denied a fair trial where the prosecutor stated in his closing argument that Juan Santiago gave the police a statement implicating Mr. Aponte, where no evidence of such a statement was admitted at the trial.

IV. The trial court reversibly erred in overruling a defense objection to the testimony from Lora Moore concerning Juan Santiago's alleged flight from Michigan following the offenses, as that testimony was irrelevant to the issue of Mr. Aponte's guilt as such flight did not occur during the pendancy of the alleged conspiracy, and erred in failing to instruct the jury as to how they should view the flight evidence.

V. Defendant's conviction and sentence for armed robbery should be reversed and vacated, as that conviction was on the underlying felony for the felony-murder conviction, and thus violates Mr. Aponte's constitutional double jeopardy rights.

The Michigan Court of Appeals vacated Petitioner's armed robbery conviction and its attendant felony-firearm conviction. However the remainder of the trial court judgment and sentence was affirmed. *People v. Aponte,* No: 232386, 2003 WL 1904355 (Mich. Ct. App. April 17, 2003).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same five claims. Relief was denied; the court was "not persuaded that the questions presented should be reviewed by this Court." *People v. Aponte,* 469 Mich. 950; 671 NW2d 46 (2003).

Petitioner filed a motion for relief from judgment with the Oakland County Circuit Court raising the following issues:

I. The Defendant's Sixth Amendment right to confront the witness against him, Juan Santiago, was violated when repeated references were made to the incriminating actions and information of this witness, but then, the available and endorsed witness was deliberately withheld to deprive the Defendant the opportunity to cross-examine the adverse allegations.

3

II. The prosecution willfully and blatantly committed misconduct by misstating the law about his duty to call at trial the res gestae witness he had endorsed and his responsibility to disclose to the jury the whole transaction, deceptively violating the Defendant's rights to due process of law and a fair trial.

III. Defendant was denied due process of law when the prosecution refused to disclose the requested evidence hearing on the credibility of its key witnesses against the Defendant and refused to allow disclosure to the jury of the exculpatory evidence tending to show that the bullets found in the Defendant's basement were not from the same batch as the bullet used to kill the victim.

IV. The Defendant's Fourteenth Amendment rights to due process and equal protection of the laws were violated because of the missing record of a great portion of the cross-examination of the government's untruthful star witness, and the subsequent instructions to the Defendant having any access to the police reports, witnesses' statements, and co-defendant's transcripts, with which to further disclose the lies this witness told and receive fair appellate review.

V. Defendant was denied effective assistance of appellate counsel when counsel failed to follow the proper process and recreate a settled record of seventy-one minutes of the cross-examination of the state's star witness, incompetently abandoned the issues specifically preserved for appeal by the Defendant's trial counsel, failed to present issues suggested by the Defendant, and failed to preserve issues presented for discretionary review.

VI. Defendant's Fifth and Sixth Amendment rights were violated by the state's use of suspiciously industrious, extraneously informed, untruthful, and highly self-serving testimony of a jailhouse informant who claimed to have heard the one and only confession made by Defendant to anyone, testified concerning an uncorroborated and deeply suspect allegation that the Defendant attempted to solicit murder through this career criminal, and was used to inject other highly inflammatory, improperly suggestive evidence into the trial.

VII. Defendant was denied his Sixth Amendment right to effective assistance of counsel by defense counsel's failures to move for important discovery of the prior criminal histories of the prosecutor's key witnesses, failures to conscientiously protect the Defendant's interests in not being demonized and repeatedly threatened with the disclosure of non-existent criminal charges, failure to challenge the admission of the only alleged confession through the state's unscrupulous and untruthful agent, and by defense counsel's incompetent buckling to whatever dirty tactic employed by prosecutor Barron to deny the Defendant a fair trial and infringe upon the Defendant's

4

constitutional rights.

VIII. The several erroneous rulings by the trial court constituted repeated abuses of that court's discretion which chilled the Defendant's rights to present a defense, to testify in his own defense, to confront the witnesses against him, denied the Defendant a fair trial, and demonstrated such legally deviant parroting of the prosecution's misstatements of the laws that bias should be presumed and a new trial granted.

IX. The improbable and incredible theory of the prosecution, the lack of integrity in the state's proffered evidence, the numerous instances of prosecutorial misconduct and judicial indiscretion, along with infringements of the Defendant's constitutional rights, resulted in a miscarriage of justice, the conviction of an innocent man, and irregularities so offensive to the maintenance of a sound judicial process that the convictions should not be allowed to stand.

X. The Defendant's Sixth Amendment rights were violated by Oakland County's systematic exclusion of minorities from jury selection, and the Defendant was denied equal protection of the law when the prosecution removed the only African-American male from the jury for pretextual and discriminatory reasons.

The trial court denied Petitioner's motion for relief from judgment in an order dated October 18, 2004.

Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims presented in his motion for relief from judgment plus the following additional issue:

XI. The Appellant's rights to due process and equal protection of the laws were violated when the trial court clearly erred and abused its discretion in summarily dismissing the Appellant's motion for relief from judgment, without a hearing, without fully and fairly addressing the merits of Appellant's cause and prejudice arguments, and without providing adequate reasons why summary dismissal was an appropriate disposition in light of the glaring irregularities occurring during Appellant's appeal as of right.

The Michigan Court of Appeals denied Petitioner's delayed application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v.*

*Aponte,* No: 261014 (Mich. Ct. App. Sept. 21, 2005).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same issues presented in his motion for relief from judgment and before the Michigan Court of Appeals.  The Michigan Supreme Court denied relief "because the defendant has failed to meet the burden of establishing relief under MCR 6.503(D)."  *People v. Aponte,* 474 Mich. 1026; 708 NW2d 422 (2006).

Petitioner now files a petition for writ of habeas corpus under 28 U.S.C. §2254 raising the following claims:

I. Mr. Aponte's right to confront the witness against him was violated when the preliminary examination testimony of his wife was read to the jury at his trial.

II. The photographic line-up and in-court identification of Mr. Aponte should have properly been suppressed upon defense counsel['s] motion as it denied Mr. Aponte due process of law.

III. Mr. Aponte was denied the right to a fair trial where the prosecutor stated in his closing argument that Juan Santiago gave the police a statement implicating Mr. Aponte where no evidence of such a statement was admitted at the trial.

IV. The trial court improperly allowed testimony from Lora Moore concerning Juan Santiago's alleged flight where such evidence was irrelevant to Mr. Aponte's guilt, and erred in failing to instruct the jury as to how they should view the flight evidence.

V. Mr. Aponte's Sixth Amendment right to confront the witness against him, Juan Santiago, was violated when repeated references were made to the incriminating actions and information of this witness, but then, the available and endorsed witness was deliberately withheld to deprive Mr. Aponte the opportunity to cross-examine the adverse allegations.

VI. Mr. Aponte was denied a fair trial and due process of law when the trial prosecutor misstated the law and committed misconduct by failing to call at the trial the sole alleged eyewitness he had endorsed to testify.

6

VII. Mr. Aponte was denied due process of law when the state refused to disclose the requested evidence concerned the failed polygraph examinations of its key witnesses and refused to allow disclosure to the jury the ballistic report concluding the bullets found in Mr. Aponte's basement were not from the same batch as the bullet used in the crimes.

VIII. Mr. Aponte's Fourteenth Amendment rights to due process and equal protection of the laws were violated when the record of the majority of the cross-examination of the state's star witness went missing, and the state subsequently refused to provide Mr. Aponte access to any of the police reports, witness statements, and his co-defendant's transcripts, with which to disclose the lies this witness told and receive fair appellate review.

IX. Mr. Aponte was denied effective assistance of appellate counsel when this attorney failed to follow the court rules and prepare a proposed settled record of the seventy-one minutes of the missing cross-examination of the state's star witness, incompetently abandoned issues specifically preserved for appeal by Mr. Aponte's trial attorney, failed to present meritorious issues requested by Mr. Aponte, and failed to preserve issues presented for federal review.

X. Mr. Aponte's Fifth and Sixth Amendment rights were violated by the state's use of suspiciously industrious, extraneously informed, untruthful, and highly self-serving testimony of a jailhouse informant who claims to have heard the one and only confession made by Mr. Aponte to anyone, testified concerning an uncorroborated and deeply suspect allegation that Mr. Aponte attempted to solicit murder through this career criminal, and was used to inject other highly inflammatory, improperly suggestive evidence into the trial.

XI. Mr. Aponte was denied effective assistance of counsel by trial counsel's failure to move for the discovery of the prior criminal histories of the prosecutor's key witnesses, failures to conscientiously protect Mr. Aponte's interests in not being demonized and repeatedly threatened by the disclosure of non-existent criminal charges, failure to challenge the admission of the only alleged confession through the state's unscrupulous and untruthful agent, and by counsel's incompetent buckling to whatever dirty tactic employed by prosecutor Barron to deny Mr. Aponte a fair trial and chill Mr. Aponte's exercise of his constitutional rights.

XII. The several erroneous rulings of the trial court demonstrated repeated abuses of discretion which chilled Mr. Aponte's rights to present a defense, to testify in his defense, to confront the witnesses against him, denying Mr. Aponte a fair trial, and indicating that bias should be presumed and a new trial granted.

7

XIII. Mr. Aponte suffered numerous instances of prosecutorial misconduct causing a miscarriage of justice, the conviction of an innocent man, and irregularities so offensive to the maintenance of a sound judicial process that the convictions should not be allowed to stand.

XIV. Mr. Aponte's Sixth Amendment rights were violated by Oakland County's systematic exclusion of minorities from jury selection, and Mr. Aponte was denied equal protection of the law when the prosecution removed the only African-American male from the jury for pretextual and discriminatory reasons.

XV. Mr. Aponte's rights to due process and equal protection of the laws were violated when the trial court clearly erred and abused its discretion in summarily dismissing Mr. Aponte's motion for relief from judgment, without a hearing, without fully and fairly addressing the merits of Mr. Aponte's cause and prejudice arguments, and without providing adequate reasons why summary dismissal was an appropriate disposition in light of the glaring irregularities occurring during Mr. Aponte's appeal as of right.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions.  Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A

state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different fro an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III.  DISCUSSION

#### A.  Procedural Default - (Claims Considered on the Merits (I - IV))

In all cases in which a state prisoner defaults his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done

9

something at trial to preserve the claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *see Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

The Michigan Court of Appeals was the last state court to issue a reasoned opinion addressing the claims regarding   the Confrontation Clause, photographic line-up, prosecutorial misconduct, admission of evidence, and cautionary instruction.  It reviewed the claims only for plain error because defense counsel did not object to the conduct. The contemporaneous-objection rule was firmly established at the time of the petitioner's trial and regularly followed with respect to claims of Confrontation Clause, photographic line-up, prosecutorial misconduct, admission of evidence, and cautionary instruction. See, e.g.,*People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 100, 435 N.W.2d 772, 775 (1989). The state court's reliance on Petitioner's failure to object to the prosecutor's conduct is an adequate and independent state ground for foreclosing review. *See Engle v. Isaac*, 456 U.S. 107, 110 (1982) (concluding that a petitioner who fails to comply with a state rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding).

The fact that the state court of appeals engaged in plain error review of Petitioner's claims involving: the Confrontation Clause, photographic line-up, prosecutorial misconduct,

admission of evidence, and cautionary instruction, does not constitute a waiver of the state procedural default. *See Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Therefore, this Court may not review Petitioner's claims unless he establishes cause for the default and actual prejudice as a result of the alleged violation of federal law, or unless he demonstrates that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Given that the cause and prejudice inquiry merges with an analysis of the merits of Petitioner's defaulted claim, the Court concludes that it would be most efficient to simply consider the merits of the claims.[1]

## B. Confrontation Clause

Petitioner claims that the trial court erred when it allowed the prosecutor to introduce a portion of his wife's preliminary examination testimony. Although the Michigan Court of Appeals agreed that the trial court erred in allowing the testimony, it concluded that the error was harmless:

> . . . [W]e do not believe that the error requires reversal. The principal significance of defendant's wife's testimony was that she was the only witness to testify concerning what time each of the men came home, that defendant and Juan Santiago arrived separately, and that defendant had unexplained possession of $600 on the day after the crime. Apart from defendant's wife's testimony, however, David Santiago picked him up on the morning in question, at which time defendant had a revolver and told David

---

[1]Although the Court considers the merits of Petitioner's procedurally defaulted claims I - IV, it will not engage in the same analysis for claims V - XV, infra; it would not be more efficient to consider those procedurally defaulted claims on the merits, and Petitioner failed to meet the burden of overcoming the procedural default.

that they were going to rob the victim and, if the victim resisted, he was going to shoot him. Also, Ruben's testimony established a timeframe for the killing, and Mr. Chittick observed defendant on the victim's street during that timeframe. Additionally, defendant gave a statement wherein he admitted going to the victim's house on the morning of the killing, and he was photographed by a security video camera at a gas station in the vicinity of the victim's home. Further, Edwin Marraro testified that defendant admitted his involvement in robbing and shooting the victim, and offered Marraro $10,000 to kill David. Marraro also testified that defendant said he used a .357 gun to shoot the victim, and the police found ammunition for a .357 gun on a bed in the basement of defendant's home. When defendant's wife's testimony is considered in the context of the weight and strength of the untainted evidence received at trial, it is not more probable than not that a different outcome would have resulted without her testimony. See [*People v Lukity,* 460 Mich 484, 495, 497, 596 NW2d 607 (1999)]. Therefore reversal is not required.

*Aponte,* 2003 WL 1904355, *1.  The Court agrees.

Confrontation Clause errors are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). The test on habeas review of constitutional errors is whether the error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This assessment of the prejudicial impact of constitutional error in a state-court criminal trial applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18 (1967)]." *Fry v. Pliler*, __ U.S. __, __, 127 S. Ct. 2321, 2328 (2007).

Factors to be considered in determining whether a Confrontation Clause error was harmless under *Brecht* include: "(1) 'the importance of the witness' testimony in the prosecution's case,' (2) 'whether the testimony was cumulative,' (3) 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material

points,' (4) 'the extent of cross-examination otherwise permitted,' and (5) 'the overall strength of the prosecution's case.'" *Vasquez v. Jones*, 496 F.3d 564, 574 & 574 n.8 (6th Cir. 2007) (quoting *Delaware v. Van Arsdall*, 475 U.S. at 684). "If the matter is so evenly balanced that this Court has grave doubt as to the harmlessness of the error, it should treat the error, not as if it were harmless, but as if it affected the verdict (*i.e.*, as if it had a substantial and injurious effect or influence in determining the jury's verdict)." *Id.* at 575 (quotation marks omitted) (quoting *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1994)).

Applying these factors to the facts of this case, Petitioner's wife's testimony would not have had  a "substantial and injurious effect or influence" on the jury's verdict.  Habeas relief is not warranted on this claim.

### C.  Photographic Line-up

Petitioner argues that the trial court erred when it denied his motion to suppress a witness' identification at a photographic line-up and at Petitioner's preliminary examination. The Michigan Court of Appeals stated as follows:

> During closing argument, defense counsel conceded that defendant was one of the persons seen by the witness. We view this concession as a waiver of any error. An "apparent error that has been waived is 'extinguished'" and, therefore, is not susceptible to review on appeal. *People v Riley,* 465 Mich 442, 449; 636 NW2d 514 (2001); see, also, *People v Carter,* 462 Mich 206, 215-220; 612 NW2d 144 (2000). Even if the issue had not been waived, the record demonstrates that the police attempted to arrange for a corporeal lineup, but were unable to do so because there were not a sufficient number of persons available with defendant's physical characteristics. Under these circumstances, a photographic lineup was permissible. See *People v Anderson,* 389 Mich 155, 186-187, n 22; 205 NW2d 461 (1973).

*Aponte,* 2003 WL 1904355, *2.

13

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno,* 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384 (1968). A suggestive line-up or photo array alone, however, does not require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite,* 432 U.S. 98, 106 (1977). The key, however, is whether there was "a very substantial likelihood of irreparable misidentification." *Id.* at 116; *Simmons v. United States,* 390 U.S. 377, 384 (1968). The central question where the pre-trial identification procedure is impermissibly suggestive, is "whether under the 'totality of the circumstances' the identification was reliable even though the [ ] procedure was suggestive." *Neil v. Biggers,* 409 U.S. 188, 199 (1972).

Five factors relevant to this "totality of the circumstances " analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. The court engages in a balancing test, weighing the factors listed in *Neil v. Biggers, supra,* against the

14

"corrupting effect of the suggestive identification itself." *Manson v. Brathwaite,* 432 U.S. at 114. Thus, a court must "follow[ ] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier,* 259 F.3d 503, 510 (6th Cir. 2001). First the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera,* 922 F.2d 934, 973 (2d cir. 1990). Accordingly, there would be no basis upon which counsel would have to move to suppress such a pre-trial identification. On the other hand, if the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *United States v. Crozier*, 259 F.3d at 510. Reliability "is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. at 114.

Petitioner has not demonstrated how the photographic display, at which he was represented by counsel, was suggestive or in some other way violated his constitutional rights. Simply because Petitioner preferred a live line-up, does not mean that an alternative method of obtaining identification evidence is automatically a violation of the accused's rights. Habeas relief is not warranted on this claim.

### D.  Prosecutorial Misconduct

"Next [Petitioner] argues that the prosecutor committed misconduct during closing argument by referring to a co-defendant's statement that had not been introduced into evidence." *Aponte,* 2003 WL 1904355, *2. The Michigan Court of Appeals disagreed:

15

> Here, it is clear from the context of the prosecutor's remarks that the prosecutor meant to refer to David Santiago, not Juan Santiago, when rebutting defense counsel's argument that all of the family members involved in this case were protecting and covering for each other. Because the prosecutor's misstatement was not calculated to mislead the jury, we conclude that it did not affect defendant's substantial rights.

*Aponte,* 2003 WL 1904355, *2.   The Court agrees.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000).  Determining whether the trial was fundamentally unfair is done by "evaluating the totality  of the circumstances surrounding each individual case."  *Anger v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982).  The Court must focus on "the fairness of the trial, not the culpability of the prosecutor."  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997), quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993).

When assessing the prosecutor's conduct, the court must decide whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006).  If they were, the court must decide whether the improper acts were so flagrant as to warrant relief.  *Id.* at 516.  The Sixth Circuit identified four factors to

16

consider when analyzing flagran*cy*: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams,* 376 F.3d at 528, quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000).

The Court does not find Petitioner's argument persuasive for three reasons. First, the Sixth Circuit "has been reluctant to grant habeas petitions on improper prosecutorial statements at closing argument," *Wilson v. Mitchell,* 250 F.3d 388, 399 (6th Cir. 2001), for "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Second, prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg,* 682 F2d 605, 607-08 (6th Cir. 1982) (*en banc).* Finally, upon reviewing the disputed text, the Court does not find that the prosecutor was engaging in any calculated or intentional misconduct.  Habeas relief is denied on this claim.

### E.  Admission of Evidence & Cautionary Instruction

Petitioner asserts that the trial court committed error when it allowed into evidence testimony about one of the co-defendants fleeing the jurisdiction after the murder.  Alternatively, Petitioner argues that the trial court erred when it failed to give a cautionary jury instruction concerning the "flight" issue.  Addressing the admission of the "flight" evidence, "[a]lthough Michigan recognizes the equivocal nature of flight evidence, such evidence is generally considered relevant and admissible." *Aponte,*

17

2003 WL 1904355, *3.  The Michigan Court of Appeals disagreed with Petitioner's position and stated as follows:

> In this case, Juan Santiago was one of defendant's alleged coconspirators. There was substantial evidence that the two men were together at the time the victim was killed. The evidence indicated that Juan worked for the victim, but had not been paid before the victim was killed. Juan had an unexplained amount of cash in his possession immediately after the killing. Further, David's [Santiago] testimony established a conspiracy to rob the victim and, if necessary, kill him. Evidence of Juan's flight was relevant to show consciousness of guilt on his part and, thereby, tended to corroborate the existence of the alleged conspiracy. Therefore, it was relevant and material, and its probative value was not substantially outweighed by the danger of unfair prejudice. MRE 403. The court did not abuse its discretion in admitting the evidence at trial.

*Aponte,* 2003 WL 1904355, *3

It is well-established that "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62,67-68 (1991)("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law . State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir. 1993).  The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court o purely state law." *Long v. Smith,* 663 F.2d 22, 23 (6th Cir. 1981).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d

18

363, 370 (6th Cir. 1994).

There exists no clearly established Supreme Court precedent holding that a state violates due process by permitting propensity evidence through the admission of other bad acts evidence. *Id.* The Sixth Circuit has noted that the Supreme Court has addressed the admission of other acts evidence in the context of the Federal Rules of evidence, but has not addressed the issue in constitutional terms. *Id.* at 513. Accordingly, the state court's decision in this case is not contrary to or an unreasonable application of Supreme Court precedent.

In the alternative, Petitioner argues that the jury should have been instructed about the "flight" evidence. The appellate court disagreed:

> . . . . [A]s a whole the court's instructions fairly presented the issues to be tried and sufficiently protected defendant's rights. Consequently, defendant has failed to establish that the court's failure to give CJI2d 4.4 amounted to plain error affecting his substantial rights.

*Aponte,* 2003 WL 1904355, *3

The burden to demonstrate that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977). A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or

19

an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Terry v. Bock,* 208 F. Supp. 2d at 793.

Petitioner fails to meet that burden, and habeas relief is denied on this claim.

### F.  Procedural Default - (Claims not Considered on the Merits (V - XV))

Petitioner makes several challenges that are subject to procedural default regarding the following issues; (V) another Confrontation Clause claim; (VI) another prosecutorial misconduct claim; (VII) failure to disclose polygraph results; (VIII) discovery violation; (IX) ineffective assistance of appellate counsel; (X) jail house informant testimony; (XI) ineffective assistance of trial counsel; (XII) presentation of a defense; (XIII) another prosecutorial misconduct claim; (XIV) impartial jury due to lack of African American presence; and (XV) trial court error in denying Petitioner's motion for relief from judgment. Respondent contends that these claims are barred by procedural default because he first raised those claims in his motion for relief from judgment and the state appellate courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with  state procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir.2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489

20

U.S. 255, 263 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first properly presented his habeas claims V-XV to the state courts in his motion for relief from judgment. Both the Michigan Supreme Court and the Michigan Court of Appeals denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Alexander v. Smith*, _ F.3d _, 2009 WL 426261, *6 (6th Cir. Feb. 20, 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* _ U.S. _, 128 S. Ct. 1897 (2008)(ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit in the grounds presented). In this case, the Michigan Supreme Court (and the Michigan Court of Appeals) relied upon a clear state procedural default in denying Petitioner relief on his claims.

21

A state prisoner who fails to comply with state procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts that appellate counsel was ineffective as cause to excuse his failure to raise habeas claim V- XV on direct appeal.  However,  Petitioner fails to show that appellate counsel was ineffective. In order to establish ineffective assistance, Petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*,

22

463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose
> on appointed counsel a duty to raise every "colorable" claim suggested by a
> client would disserve the ... goal of vigorous and effective advocacy ....
> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56,

59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of

'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."

*See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).

"Generally, only when ignored issues are clearly stronger than those presented will the

presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*,

281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and

prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was

obvious from the trial record and would have resulted in reversal on appeal. *See Meade*

*v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the above stated claims (V -XV)

appellate counsel's performance fell outside the wide range of professionally competent

assistance.  Appellate counsel presented viable issues  on direct appeal in the state courts,

including claims addressing the Confrontation Clause, a photographic line-up, prosecutorial

misconduct, admission of evidence, cautionary instructions, and a doubled jeopardy claim.

A favorable appellate ruling by the Court of Appeals resulted in Petitioner's armed robbery

and one of his felony firearm convictions being vacated. In fact, the Michigan Court of

23

Appeals agreed that the trial court erred in the admission of Petitioner's wife's statements, albeit harmless error.

Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default. He has likewise failed to show that he is entitled to habeas relief based upon an independent claim that appellate counsel was ineffective.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Moreover, Petitioner has not demonstrated that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner made no such showing. His habeas claims are barred by procedural default, his ineffective assistance of appellate counsel claim lacks merit, and none of his claims (V- XV) warrants relief.

## IV.  CONCLUSION

The petition for a writ of habeas corpus is **DENIED.**

24

**IT IS ORDERED.**

　　　　　　　　　　　　　　　　　　　/s/ Victoria A. Roberts
　　　　　　　　　　　　　　　　Victoria A. Roberts
　　　　　　　　　　　　　　　　United States District Judge

Dated:  March 31, 2009

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and Peter Aponte by electronic means or U.S. Mail on March 31, 2009.<br><br>s/Linda Vertriest<br>Deputy Clerk |

25